PREGERSON, District Judge, dissenting:
I dissent. In 1981, a jury found Frederick Varner guilty of second degree murder and the trial judge sentenced him to seventeen years to life in prison, with the possibility of parole. Varner has been a model prisoner for over two decades and the evidence overwhelmingly indicates that he in no way poses an unreasonable risk of danger to society. Nevertheless, the Parole Board has denied Varner’s parole request nine times.
Under California law, state courts review the record and the decision to deny parole for “ ‘some evidence’ that an inmate poses a current .threat to public safety,” which is the “crucial determinant” of whether the prisoner is granted parole. Hayward v. Marshall, 603 F.3d 546, 551, 561 (9th Cir.2010) (en banc) (quoting Cal.Penal Code § 3041). We must decide whether the state court’s decision to uphold the Board’s denial of “parole was an ‘unreasonable application’ of the California ‘some evidence’ requirement, or was ‘based on an unreasonable determination in light of the evidence.’ ” Id. at 562-63 (quoting 28 U.S.C. §§ 2254(d)(1) — (2)).
The sentencing judge found the possibility of parole appropriate for Varner. The Parole Board, however, has denied Varner parole nine times based solely on pre-conviction factors, all of which the trial judge was clearly aware when he sentenced Varner. Accordingly, the state court erred in two ways.
First, the state court unreasonably applied the “some evidence” requirement when it upheld the Board’s denial of parole *482 because it relied solely on Varner’s 1980 offense and Varner’s prior criminal record. This evidence, all of which was available to the sentencing judge, cannot be the sole basis for a decision that is inconsistent with the sentencing judge’s decision. Second, the state court’s decision was unreasonable in light of the evidence as a whole, which overwhelmingly indicates that Var-ner does not pose an unreasonable risk of danger to public safety. Therefore, the district court erred in denying Varner’s petition for habeas relief.
I.
We have held that the Parole Board may consider the offense leading to the prisoner’s incarceration, but only to the extent that it “address[es] the determining factor, a current threat to public safety.” Hayward, 603 F.3d at 562 (internal quotations omitted); In re Shaputis, 44 Cal.4th 1241, 82 Cal.Rptr.3d 213, 190 P.3d 573, 581 (2008). Unless sufficient evidence demonstrates that public safety requires a longer period of imprisonment, “California law requires the Board to grant an eligible inmate a parole date.... ” Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir.2010) (citing Cal.Penal Code § 3041(b)). Where the Board denies parole to a prisoner in a case where the sentencing judge found the possibility of parole appropriate, the “some evidence” rule requires that the Board rely on something more than pre-conviction factors. Compare Shaputis, 82 Cal.Rptr.3d 213, 190 P.3d at 580-81 (2008) (upholding the Board’s denial of parole because of aggravating pre-conviction factors plus defendant’s present refusal to accept responsibility for his crime and his unstable social and family relationships) and Hayward, 603 F.3d at 563 (upholding the Board’s denial of parole because of aggravating pre-conviction factors plus defendant’s psychological evaluation indicating he may pose a “moderate” risk to public safety if released) with Pirtle, 611 F.3d at 1021-22 (reversing the Board’s denial of parole because the pre-conviction factors, which include the second-degree murder of defendant’s wife, without further evidence, do not support a finding of current dangerousness) and Cooke v. Solis, 606 F.3d 1206, 1208, 1216 (9th Cir.2010) (reversing the Board’s denial of parole because the pre-conviction factors, which include the first-degree of defendant’s friend, without further evidence, do not support a finding of current dangerousness).
II.
By upholding the Board’s denial of Var-ner’s request, the majority subverts the very foundation of parole and the presumptions in its favor under California law. Indeed, “to focus completely on unchanging factors such as the commitment offense and pre-incarceration history is at odds with a parole system that assumes, as its basic premise, that some rehabilitation is at least possible.” Hayward, 603 F.3d at 570 (Berzon, J., concurring in part and dissenting in part). This point is particularly salient in light of the overwhelming record evidence indicating that Varner is, in fact, rehabilitated and that those unchanging, pre-conviction factors bear minimal relevance whether Varner poses a threat to society.
In California, “parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable.” In re Scott, 119 Cal.App.4th 871, 891, 15 Cal.Rptr.3d 32 (App.Ct.2004) (internal citation omitted).
It is unreasonable in light of all the evidence to conclude that the offense Var-ner committed in 1980 establishes his current dangerousness. Denying parole *483 based on this offense effectively equates a second degree murder conviction with current dangerousness, regardless of the other evidence that has accumulated since that offense. Because the underlying crime for second degree murder convictions will always be grave, denying parole based solely on that initial crime will inevitably “swallow the rule” and impermissibly turn parole into a rare exception. Id. at 891, 15 Cal.Rptr.3d 32. This result is at odds with the California Supreme Court’s express rejection of the argument “that the aggravated circumstances of a commitment offense inherently establish current dangerousness.” Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, 554 (2008)).
The Parole Board may not use its discretion to find a back door around a rule, especially where the California Supreme Court has expressly rejected that route. Thus, the state court’s application of the “some evidence” requirement here is unreasonable and hostile to the California courts’ policies regarding parole.
III.
The majority relies on this court’s en banc decision in Hayward to support its conclusion that it was reasonable to deny Varner parole. Maj. Op. 482. For support, the majority cites the Hayward court’s consideration of the prisoner’s “premeditated and extremely vicious” commitment offense and the psychological reports indicating the prisoner “would pose a ‘low’ to ‘moderate’ risk of danger if released.” [1] Maj. Op. 482. This reliance is misplaced. The facts in Hayward are in no way analogous to Varner’s case. Further, because Hayward involved facts beyond the mere fact of conviction, Hayward does not support the majority’s contention that the commitment offense can be the primary basis for the “some evidence” requirement.
In Hayward, we held that Hayward’s premeditated and extremely vicious commitment offense combined with the unfavorable psychological reports constituted some evidence of current dangerousness. Hayward, 603 F.3d at 563. Hayward’s psychological evaluation results were directly related to whether or not Hayward posed an unreasonable risk of danger to society, making that factor extremely relevant to the parole inquiry. Id. In this case, however, Varner’s commitment offense was neither premeditated nor extremely vicious, and Varner’s favorable psychological reports demonstrate that parole should be granted. Id.
Here, the only factor other than Var-ner’s commitment offense that the Parole Board cited to establish his current dangerousness was his prior criminal record. Varner’s criminal activities during his youth nearly three decades ago are remote and have virtually no connection to an assessment of Varner’s current dangerousness. Further, during his 1990 parole hearing, the Board found that Varner has “a limited arrest history.” There is a big difference between the relevance of Var-ner’s 30-year-old criminal history and the relevance of Hayward’s current, unfavorable psychological evaluations. Further, in contrast to Hayward’s unfavorable psychological evaluations, here, the sentencing judge was aware of Varner’s criminal history when the judge found that parole might be appropriate.
*484 In addition, factors present in Hayward that are absent here include: (1) Hayward’s long, and escalating history of violence, including at least twenty arrests pri- or to the commitment offense for crimes including attempted murder, assault, and battery; (2) the incident that provoked Hayward’s crime occurred eight months prior to Hayward murdering the victim; and (3) Hayward’s expressed lack of remorse for his crime 19 years after it was committed. Hayward, 603 F.3d at 569-70 (Berzon, J., concurring in part and dissenting in part). Thus, Hayward does not hold that pre-conviction factors alone can fulfill the “some evidence” requirement. This is particularly true when those pre-conviction factors are as disconnected from the inquiry of current dangerousness as they are in Varner’s case. For the foregoing reasons, the state court erred in finding that the combination of Varner’s unexceptional commitment offense and his criminal history from three decades ago established some evidence of his current dangerousness.
IV.
Under California law, we must decide whether the facts of or the events priors to the commitment offense “are probative to the central issue of current dangerousness when considered in light of the full record .... ” Cooke, 606 F.3d at 1214 (quoting Lawrence, 82 Cal.Rptr.3d 169, 190 P.3d at 560) (emphasis in original). The state court’s decision to uphold the Board’s denial of parole is unreasonable in this case because the pre-conviction factors are not probative to the central issue of' current dangerousness. The evidence clearly demonstrates that Varner has been a model prisoner for the past two decades who is suitable for parole and does not pose an unreasonable risk of dangerousness to the public.
V.
We have held that state courts err when they uphold parole denials based on factors that, in light of the complete record, do not indicate that the prisoner poses an unreasonable risk of danger to public safety. See Cooke, 606 F.3d 1206. The Cooke court reversed the state court’s decision to uphold a parole denial where the prisoner (1) had been imprisoned for eleven years for the crime of first degree murder; (2) received a psychological evaluation indicating that he posed a “low risk” of harm to the general public; and (3) had committed two infractions in prison nearly a decade earlier that did not demonstrate dangerousness. Id.
The facts here are far less indicative of current dangerousness than those in Cooke. Varner was convicted of second degree murder, not first degree, like Cooke. Varner has been in prison for nearly thirty years, as compared to Cooke’s eleven years. Varner’s last prison infraction occurred more than two decades ago, whereas the Parole Board in Cooke looked favorably upon the fact that Cooke had “been discipline-free for nearly a decade.” Id. at 1215. Thus, even without considering the voluminous evidence accumulated during Varner’s imprisonment indicating his suitability for parole, the facts of this case are still stronger than Cooke, where we overturned the Board’s denial of parole.
The majority asserts that it was reasonable for the state court to conclude that Varner’s crime was carried out in a particularly “cruel” and “callous” manner. Maj. Op. 482-83. Second degree murder, however, could always be described as “cruel” and “callous,” and the conviction of second degree murder itself does not per se indicate current dangerousness. To demonstrate a cruel and callous crime that is *485 probative to the question of current dangerousness, “the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder.” Scott, 119 Cal.App.4th at 891, 15 Cal.Rptr.3d 32.
In one of our court’s recent decisions, Pirtle, the prisoner was sentenced to seventeen years to life in prison for second degree murder. Pirtle, 611 F.3d at 1017-18. Pirtle discovered his wife at a bar dancing with another man and, after she told Pirtle that she was going home with the man instead of with him, Pirtle shot and killed her. Id. at 1018-19. On appeal, we overturned the Parole Board’s finding that Pirtle’s crime was especially cruel and callous, explaining that the victim did not suffer; that Pirtle did not terrorize the victim, though he did slap her first; and that there were no other characteristics that made the prisoner’s action “especially cruel” or “exceptionally callous.” Id. at 1021-22. Further, we overturned the Parole Board’s finding that the crime was committed in a “dispassionate and calculated manner” because the record did not support the finding that Pirtle went home to get his gun or that he “spent time coolly planning the crime in advance.” Id. Finally, we overturned the Board’s finding that the motive was “inexplicable” or “very trivial in relation to the offense,” explaining that Pirtle shot his wife in “a highly charged, emotional moment” after she publicly told him she was leaving a bar with another man. Id. at 1022-24.
Varner’s crime, despite statements by the Parole Board to the contrary, was likewise not premeditated. No record evidence demonstrates premeditation, which is why the trial jury elected convicted Var-ner of second, rather than first degree murder. Varner shot the victim after the victim insulted Varner and Varner’s father. Evidence in the record supports Varner’s assertion that he had the gun in his car because he was trying to sell it, not because he had planned the murder. According to Varner, the shooting occurred after a struggle between himself and the victim, who wielded a knife. Shortly after the crime, police recovered a knife nearby matching Varner’s description.
As in Pirtle, Varner’s crime was neither particularly cruel or exceptionally callous, nor was the motive inexplicable or very trivial in relation to the crime. Even disregarding Varner’s version of the events, parts of which are well-supported by the record, Varner did not terrorize the victim, attempt to inflict additional pain, or do anything else that would distinguish his crime as especially cruel or callous. Var-ner also turned himself in shortly after the shooting. Further, Varner committed the crime in a highly charged, emotional moment, because he felt that the victim provoked him and disrespected him and his father. Thus, the motivation for the crime is not inexplicable or very trivial in relation to the crime, particularly given the evidence that the victim was inebriated and had a 10-inch knife. See Cooke, 606 F.3d 1206 (overturning the state court’s upholding of the Board’s denial of parole where the motivation for the murder was a stolen necklace).
Finally, the Parole Board failed to adequately take into account mitigating factors prior to Varner’s conviction. These factors include that Varner received his General Equivalency Diploma; attended college for some time; received an honorable discharge from the Army; worked continuously up until his arrest; was technically trained as a welding engineer; did not have any serious substance abuse issues; and drank alcohol infrequently.
*486 For the foregoing reasons, Varner’s commitment offense does not indicate current dangerousness.
VI.
Varner has been in prison for almost thirty years, despite becoming eligible for parole after seventeen years. During his imprisonment, Varner has made exceptional progress and has taken extraordinary steps to demonstrate that he is suitable for parole. Denying parole to someone with Varner’s prison record sets the bar unreasonably high and contradicts to the notion that parole in California is the rule, not the exception. Evidence demonstrating Var-ner’s suitability for parole includes that he:
• Completed all steps of Alcoholics Anonymous;
• Received a college degree in 2001;
• Performed high-quality, consistent work at his infirmary job, where his supervisor formally commended him for doing an “exceptional job”;
• Has no disciplinary action for two decades;
• Received psychological evaluations indicating no need for treatment and stating that he would pose a “low” risk to public safety if released;
• Received commendations for his work counseling at-risk youth;
• Trained extensively with a literacy program to tutor fellow inmates;
• Received commendation from a Watch Commander stating that Varner “can work with any professional environment and ... should do well in society. ... [If] granted parole Varner can be a viable and contributing individual to society and the community as a whole”;
• Has numerous similar commendations and letters of support from correctional officers, a judge, religious leaders, presidents of organizations in which he volunteers, and family members;
• Is very involved in the religious community; the Muslim Chaplain commended his “excellent character and behavior” and stated that in his 15 years he has seen few inmates in whom he has more confidence;
• Received a certificate of recognition from the California State Assembly for his Associate of Arts degree;
• Is a talented songwriter and wrote the theme song for one of his outreach organizations;
• Has accomplished everything the Parole Board had asked of him in previous parole hearings;
• Donated 20% of what he has earned in prison to victims’ groups;
• Finally, committed one violent act in prison 25 years ago, in 1985, but has had no infractions since that time.
VII.
' Varner has realistic plans for the future and has taken many practical steps to prepare for life after prison. He has a stable family life, maintains positive relationships with his eleven siblings, and plans to live with one of his sisters upon his release. Varner has a detailed, step-by-step parole plan and an extensive log of “outside support service contacts].” Remarkably, Varner already has three job offers and plans to begin working immediately upon his release for a medical supply company. Cf. Cooke, 606 F.3d at 1211 (citing lack of a “marketable skill” as part of the Parole Board’s justification for denying the prisoner parole). Further, Var-ner plans to later work with the youth crisis counseling program for which he volunteered, and is in communication with a religious organization about spearheading a rehabilitation program aimed at *487 treating drug abuse and curbing recidivism.
VIII.
Since Varner’s hearing in 1990, the Board has consistently recognized that Varner accepts full responsibility for his crime and makes no attempt to excuse what he calls his “willful and intentional role in murdering [the victim].” Varner is remorseful, admitting that there is “no justification for the taking of another human being’s life” and acknowledging that he “had an opportunity to consider the consequences of my actions, but I chose not to.” Further, during Varner’s 2003 parole hearing, the Parole Board acknowledged that Varner expressed sincerely and deeply held feelings of remorse and regret. Varner is now 58 years old and his age further militates in favor of finding that he does not pose a current danger to the public. See In re Cooper, 62 Cal.Rptr.3d 907, 922 (Cal.App.2007) (holding that the fact that the prisoner was over 50 was a positive factor in the parole decision because prisoners over 50 have a lower likelihood of recidivism). Finally, and most relevant to the Parole Board’s inquiry, Varner’s psychological reports indicate that he is at only a “low” risk for violent behavior.
Varner’s record overwhelmingly indicates that he does not pose an unreasonable risk of current dangerousness and that he would be a highly productive member of society upon his release. Varner committed a terrible crime, turned himself in hours later, and has expressed regret for his actions. For the last two decades, Varner has worked tirelessly to accept responsibility for his crime, close that chapter of his life, and do all that he can to contribute to society and help others who are at risk. If Varner, recognized by so many respected figures as an exceptionally positive and rehabilitated inmate, does not meet the conditions for parole, how can parole in California possibly continue to be the rule, rather than the exception? Denying parole to a model prisoner like Var-ner raises the bar so high that the notion of parole itself is being denied. Because this result is inconsistent with the laws of California and because the evidence overwhelmingly indicates that it was unreasonable to deny Varner parole, I dissent.

. The majority omits the part of this sentence where the Hayward court explicitly cited Hayward’s " ‘low’ to 'moderate' risk,” "as opposed to 'no' or merely low risk.” Hayward, 603 F.3d at 563 (emphasis added); Maj. Op. 482. Varner’s psychological report, unlike Hayward’s, indicated merely "low” risk.