**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FREDERICK VARNER, | No. 05-16029 |
| Petitioner - Appellant, | D.C. No. CV-04-03235-MHP |
| v. | |
| JILL BROWN, Warden, | MEMORANDUM [*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, District Judge, Presiding

Argued and Submitted August 17, 2007
San Francisco, California

Before: PREGERSON, SILER [**], and BEA, Circuit Judges.

Petitioner Frederick Varner ("Varner") appeals the district court's denial of

his petition for a writ of habeas corpus. Varner was convicted of second-degree

murder in California state court in 1981 and sentenced to seventeen years to life in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

prison, with the possibility of parole. Varner's habeas petition is based, not on his original conviction, but on a 2003 decision by a panel of the California Board of Prison Terms ("Board") that denied Varner parole. Following a series of unsuccessful habeas petitions and petitions for review in California state court, Varner filed a petition for a writ of habeas corpus in federal district court. 28 U.S.C. § 2254. The district court denied the petition. On appeal, Varner contends the Board's denial of parole violated his due process rights because there was not "some evidence" to support the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm. Because the facts are known to the parties, we revisit them only as necessary.

"'[S]ome evidence' of future dangerousness" is a "*sine qua non* for denial of parole in California." *Hayward v. Marshall*, 603 F.3d 546, 562 (9th Cir. 2010) (en banc) (citations omitted). As we explained in *Hayward*, on federal habeas review, we "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Id.* at 563 (quoting 28 U.S.C. § 2254(d)(1)–(2)) (footnotes omitted).

In this case, the Board's decision to deny Varner parole did not violate due

process because some evidence supports the Board's conclusion that Varner "[was] not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." The Board based its conclusion on the following facts: (1) Varner carried out his commitment offense "in an especially cruel and callous manner" and his motive "was inexplicable or very trivial"; and (2) Varner had a prior criminal history involving the infliction or attempted infliction of serious injury on a victim. We reviewed the record and hold some evidence supports the Board's decision to deny parole based on both factors. *See id.* (holding some evidence supported the denial of parole where the offense was "premeditated and extremely vicious" and psychological reports suggested the prisoner "would pose a 'low' to 'moderate' risk of danger if released"). Because the record supports the Board's decision, the state court's conclusion that Varner was properly denied parole was not an unreasonable application of the "some evidence" standard, nor was it an unreasonable determination of the facts in light of the evidence. *See id.*

Varner contends the Board's sole reliance on two immutable characteristics (commitment offense and criminal history) to deny him parole violates due process. We reject this argument. We explained in *Hayward* that "an aggravated offense does not, in every case, provide evidence that the inmate is a current threat

3

to public safety." *Id.* at 562 (citation and internal quotation marks omitted). But we also explained that an aggravated offense may establish that the prisoner is currently dangerous if "the record also establishes that something in the prisoner's pre- or post-incarceration history . . . supports the inference of dangerousness." *Id.* (citation omitted). *Hayward*'s reference to a prisoner's pre-incarceration history establishes that a prisoner's criminal history can support the inference that the prisoner is dangerous, even though criminal history is an immutable characteristic. *See id.* It was not unreasonable for the state court to conclude Varner's conviction for second-degree murder, when considered in light of the cruel and heinous manner in which it was carried out, the inexplicable or trivial motive, and Varner's prior criminal history, supported an inference that he was dangerous.

We also reject Varner's argument that the Board's decision to deny him parole based on immutable factors denied him due process because he has served his minimum term in prison. First, California law does not distinguish for parole purposes between a prisoner who has served his minimum sentence and one who has not. *See* 15 Cal. Code Regs. § 2402(a) ("*Regardless of the length of time served*, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." (emphasis added)). Second, there is no clearly

4

established federal law, as determined by the United States Supreme Court, that establishes a different standard of review for parole denials to inmates who have served their minimum sentences.

Finally, we hold the district court did not abuse its discretion in denying Varner an evidentiary hearing in which he sought to introduce evidence that the Board was biased in its parole decision. Varner submitted to the district court approximately 200 declarations from other inmates who were denied parole on the basis of their commitment offense and a district court decision, which held that the California Board of Prison Terms had adopted a blanket policy against parole for murderers. *Coleman v. Bd. of Prison Terms*, 2005 WL 4629202 (E.D. Cal. Dec. 2, 2005). Nevertheless, Varner failed to develop the factual basis of his bias claims in state court and failed to show "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Varner could have procured other inmates' declarations or developed the type of evidence that convinced the *Coleman* court of the existence of a "no parole for murderers policy" before his state habeas proceedings ended. Further, Varner's reliance on *Coleman* is inapposite because the Ninth Circuit in *Coleman*, in dismissing the appeal as moot, held the district court's decision was limited to the facts of *Coleman* and "should not be extrapolated to parole

5

challenges by other prisoners." *Coleman v. Bd. of Prison Terms*, 228 Fed. Appx. 673, 676 n.5 (9th Cir. Apr. 6, 2007) (unpublished memorandum disposition).

We therefore affirm the district court's order that denied Varner's petition for a writ of habeas corpus.

**AFFIRMED.**

**Varner v. Brown, No. 05-16029,** *Pregerson, J., dissenting***:**

I dissent. In 1981, a jury found Frederick Varner guilty of second degree murder and the trial judge sentenced him to seventeen years to life in prison, with the possibility of parole. Varner has been a model prisoner for over two decades and the evidence overwhelmingly indicates that he in no way poses an unreasonable risk of danger to society. Nevertheless, the Parole Board has denied Varner's parole request nine times.

Under California law, state courts review the record and the decision to deny parole for "'some evidence' that an inmate poses a current threat to public safety," which is the "crucial determinant" of whether the prisoner is granted parole. *Hayward v. Marshall*, 603 F.3d 546, 551, 561 (9th Cir. 2010) (en banc) (quoting CAL. PENAL CODE § 3041). We must decide whether the state court's decision to uphold the Board's denial of "parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination in light of the evidence.'" *Id*. at 562-63 (quoting 28 U.S.C. §§ 2254(d)(1)-(2)).

The sentencing judge found the possibility of parole appropriate for Varner. The Parole Board, however, has denied Varner parole *nine times* based solely on

1

pre-conviction factors, all of which the trial judge was clearly aware when he sentenced Varner. Accordingly, the state court erred in two ways.

First, the state court unreasonably applied the "some evidence" requirement when it upheld the Board's denial of parole because it relied solely on Varner's 1980 offense and Varner's prior criminal record. This evidence, all of which was available to the sentencing judge, cannot be the sole basis for a decision that is inconsistent with the sentencing judge's decision. Second, the state court's decision was unreasonable in light of the evidence as a whole, which overwhelmingly indicates that Varner does not pose an unreasonable risk of danger to public safety. Therefore, the district court erred in denying Varner's petition for habeas relief.

## I.

We have held that the Parole Board may consider the offense leading to the prisoner's incarceration, but *only to the extent* that it "address[es] the determining factor, a current threat to public safety." *Hayward*, 603 F.3d at 562 (internal quotations omitted); *In re Shaputis*, 190 P.3d 573, 581 (2008). Unless sufficient evidence demonstrates that public safety requires a longer period of imprisonment, "California law requires the Board to grant an eligible inmate a parole date . . . ." *Pirtle v. California Bd. of Prison Terms*, No. 07-16097, 2010 WL 2732888, at *4

2

(9th Cir. July 12, 2010) (citing CAL. PENAL CODE § 3041(b)). Where the Board denies parole to a prisoner in a case where the sentencing judge found the possibility of parole appropriate, the "some evidence" rule requires that the Board rely on something more than pre-conviction factors. *Compare Shaputis,* 190 P.3d at 580-81 (2008) (upholding the Board's denial of parole because of aggravating pre-conviction factors *plus* defendant's present refusal to accept responsibility for his crime and his unstable social and family relationships) *and Hayward* 603 F.3d at 563 (upholding the Board's denial of parole because of aggravating pre-conviction factors *plus* defendant's psychological evaluation indicating he may pose a "moderate" risk to public safety if released) *with Pirtle*, No. 07-16097, at *5 (reversing the Board's denial of parole because the pre-conviction factors, which include the second-degree murder of defendant's wife, without further evidence, do not support a finding of *current* dangerousness) *and Cooke v. Solis*, 606 F.3d 1206, 1208, 1216 (9th Cir. 2010) (reversing the Board's denial of parole because the pre-conviction factors, which include the first-degree of defendant's friend, without further evidence, do not support a finding of *current* dangerousness).

## II.

By upholding the Board's denial of Varner's request, the majority subverts the very foundation of parole and the presumptions in its favor under California

3

law. Indeed, "to focus completely on unchanging factors such as the commitment offense and pre-incarceration history is at odds with a parole system that assumes, as its basic premise, that some rehabilitation is at least possible." *Hayward*, 603 F.3d at 570 (Berzon, J., concurring in part and dissenting in part). This point is particularly salient in light of the overwhelming record evidence indicating that Varner is, in fact, rehabilitated and that those unchanging, pre-conviction factors bear minimal relevance whether Varner poses a threat to society.

In California, "parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable." *In re Scott*, 119 Cal. App. 4th 871, 891 (App. Ct. 2004) (internal citation omitted).

It is unreasonable in light of all the evidence to conclude that the offense Varner committed in 1980 establishes his current dangerousness. Denying parole based on this offense effectively equates a second degree murder conviction with current dangerousness, regardless of the other evidence that has accumulated since that offense. Because the underlying crime for second degree murder convictions will *always* be grave, denying parole based solely on that initial crime will inevitably "swallow the rule" and impermissibly turn parole into a rare exception. *Id*. at 891. This result is at odds with the California Supreme Court's express rejection of the argument "that the aggravated circumstances of a commitment

4

offense inherently establish current dangerousness." *Cooke*, 606 F.3d at 1214

(quoting *In re Lawrence*, 190 P.3d 535, 554 (Cal. 2008)).

The Parole Board may not use its discretion to find a back door around a

rule, especially where the California Supreme Court has expressly rejected that

route. Thus, the state court's application of the "some evidence" requirement here

is unreasonable and hostile to the California courts' policies regarding parole.

**III.**

The majority relies on this court's en banc decision in *Hayward* to support

its conclusion that it was reasonable to deny Varner parole. *Maj. Op.* 3. For

support, the majority cites the *Hayward* court's consideration of the prisoner's

"premeditated and extremely vicious" commitment offense and the psychological

reports indicating the prisoner "would pose a 'low' to 'moderate' risk of danger if

released."[2] *Maj. Op.* 3. This reliance is misplaced. The facts in *Hayward* are in no

way analogous to Varner's case. Further, because *Hayward* involved facts beyond

the mere fact of conviction, *Hayward* does not support the majority's contention

---

[1] The majority omits the part of this sentence where the *Hayward* court explicitly cited Hayward's "'low' to 'moderate' risk," "as opposed to 'no' *or merely low risk*." *Hayward*, 603 F.3d at 563 (emphasis added); *Maj. Op.* 3. Varner's psychological report, unlike Hayward's, indicated merely "low" risk.

5

that the commitment offense can be the primary basis for the "some evidence" requirement.

In *Hayward*, we held that Hayward's premeditated and extremely vicious commitment offense *combined* with the unfavorable psychological reports constituted some evidence of current dangerousness. *Hayward*, 603 F.3d at 563. Hayward's psychological evaluation results were *directly related* to whether or not Hayward posed an unreasonable risk of danger to society, making that factor extremely relevant to the parole inquiry. *Id.* In this case, however, Varner's commitment offense was neither premeditated nor extremely vicious, and Varner's favorable psychological reports demonstrate that parole *should* be granted. *Id.*

Here, the only factor other than Varner's commitment offense that the Parole Board cited to establish his current dangerousness was his prior criminal record. Varner's criminal activities during his youth nearly three decades ago are remote and have virtually no connection to an assessment of Varner's current dangerousness. Further, during his 1990 parole hearing, the Board found that Varner has "a limited arrest history." There is a big difference between the relevance of Varner's 30-year-old criminal history and the relevance of Hayward's current, unfavorable psychological evaluations. Further, in contrast to Hayward's

6

unfavorable psychological evaluations, here, the sentencing judge was aware of Varner's criminal history when the judge found that parole might be appropriate.

In addition, factors present in *Hayward* that are absent here include: (1) Hayward's long and escalating history of violence, including at least twenty arrests prior to the commitment offense for crimes including attempted murder, assault, and battery; (2) the incident that provoked Hayward's crime occurred eight months prior to Hayward murdering the victim; and (3) Hayward's expressed lack of remorse for his crime 19 years after it was committed. *Hayward*, 603 F.3d at 569-70 (Berzon, J., concurring in part and dissenting in part). Thus, *Hayward* does not hold that pre-conviction factors alone can fulfill the "some evidence" requirement. This is particularly true when those pre-conviction factors are as disconnected from the inquiry of current dangerousness as they are in Varner's case. For the foregoing reasons, the state court erred in finding that the combination of Varner's unexceptional commitment offense and his criminal history from three decades ago established some evidence of his current dangerousness.

## IV.

Under California law, we must decide whether the facts of or the events priors to the commitment offense "are *probative* to the central issue of *current* dangerousness when considered in light of the full record. . . ." *Cooke*, 606

F.3d at 1214 (quoting *Lawrence*, 190 P.3d at 560) (emphasis in original). The state court's decision to uphold the Board's denial of parole is unreasonable in this case because the pre-conviction factors are not probative to the central issue of current dangerousness. The evidence clearly demonstrates that Varner has been a model prisoner for the past two decades who is suitable for parole and does not pose an unreasonable risk of dangerousness to the public.

## V.

We have held that state courts err when they uphold parole denials based on factors that, in light of the complete record, do not indicate that the prisoner poses an unreasonable risk of danger to public safety. *See Cooke*, 606 F.3d 1206. The *Cooke* court reversed the state court's decision to uphold a parole denial where the prisoner (1) had been imprisoned for eleven years for the crime of first degree murder; (2) received a psychological evaluation indicating that he posed a "low risk" of harm to the general public; and (3) had committed two infractions in prison nearly a decade earlier that did not demonstrate dangerousness. *Id.*

The facts here are far less indicative of current dangerousness than those in *Cooke*. Varner was convicted of second degree murder, not first degree, like Cooke. Varner has been in prison for nearly thirty years, as compared to Cooke's eleven years. Varner's last prison infraction occurred more than two decades ago,

8

whereas the Parole Board in *Cooke* looked favorably upon the fact that Cooke had "been discipline-free for nearly a decade." *Id.* at 1215. Thus, even without considering the voluminous evidence accumulated during Varner's imprisonment indicating his suitability for parole, the facts of this case are still stronger than *Cooke,* where we overturned the Board's denial of parole.

The majority asserts that it was reasonable for the state court to conclude that Varner's crime was carried out in a particularly "cruel" and "callous" manner. *Maj. Op.* 3-4. Second degree murder, however, could *always* be described as "cruel" and "callous," and the conviction of second degree murder itself does not per se indicate current dangerousness. To demonstrate a cruel and callous crime that is probative to the question of current dangerousness, "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder." *Scott*, 119 Cal. App. 4th at 891.

In one of our court's recent decisions, *Pirtle*, the prisoner was sentenced to seventeen years to life in prison for second degree murder. *Pirtle*, No. 07-16097 at *1. Pirtle discovered his wife at a bar dancing with another man and, after she told Pirtle that she was going home with the man instead of with him, Pirtle shot and killed her. *Id.* at *2. On appeal, we overturned the Parole Board's finding that

9

Pirtle's crime was especially cruel and callous, explaining that the victim did not suffer; that Pirtle did not terrorize the victim, though he did slap her first; and that there were no other characteristics that made the prisoner's action "especially cruel" or "exceptionally callous." *Id.* at *5. Further, we overturned the Parole Board's finding that the crime was committed in a "dispassionate and calculated manner" because the record did not support the finding that Pirtle went home to get his gun or that he "spent time coolly planning the crime in advance." *Id.* Finally, we overturned the Board's finding that the motive was "inexplicable" or "very trivial in relation to the offense," explaining that Pirtle shot his wife in "a highly charged, emotional moment" after she publicly told him she was leaving a bar with another man. *Id.* at *6.

Varner's crime, despite statements by the Parole Board to the contrary, was likewise not premeditated. No record evidence demonstrates premeditation, which is why the trial jury elected convicted Varner of second, rather than first degree murder. Varner shot the victim after the victim insulted Varner and Varner's father. Evidence in the record supports Varner's assertion that he had the gun in his car because he was trying to sell it, not because he had planned the murder. According to Varner, the shooting occurred after a struggle between himself and

10

the victim, who wielded a knife. Shortly after the crime, police recovered a knife nearby matching Varner's description.

As in *Pirtle*, Varner's crime was neither particularly cruel or exceptionally callous, nor was the motive inexplicable or very trivial in relation to the crime. Even disregarding Varner's version of the events, parts of which are well-supported by the record, Varner did not terrorize the victim, attempt to inflict additional pain, or do anything else that would distinguish his crime as especially cruel or callous. Varner also turned himself in shortly after the shooting. Further, Varner committed the crime in a highly charged, emotional moment, because he felt that the victim provoked him and disrespected him and his father. Thus, the motivation for the crime is not inexplicable or very trivial in relation to the crime, particularly given the evidence that the victim was inebriated and had a 10-inch knife. *See Cooke*, 606 F.3d 1206 (overturning the state court's upholding of the Board's denial of parole where the motivation for the murder was a stolen necklace).

Finally, the Parole Board failed to adequately take into account mitigating factors prior to Varner's conviction. These factors include that Varner received his General Equivalency Diploma; attended college for some time; received an honorable discharge from the Army; worked continuously up until his arrest; was

11

technically trained as a welding engineer; did not have any serious substance abuse issues; and drank alcohol infrequently.

For the foregoing reasons, Varner's commitment offense does not indicate current dangerousness.

## VI.

Varner has been in prison for almost thirty years, despite becoming eligible for parole after seventeen years. During his imprisonment, Varner has made exceptional progress and has taken extraordinary steps to demonstrate that he is suitable for parole. Denying parole to someone with Varner's prison record sets the bar unreasonably high and contradicts to the notion that parole in California is the rule, not the exception. Evidence demonstrating Varner's suitability for parole includes that he:

- Completed all steps of Alcoholics Anonymous;

- Received a college degree in 2001;

- Performed high-quality, consistent work at his infirmary job, where his supervisor formally commended him for doing an "exceptional job";

- Has no disciplinary action for two decades;

- Received psychological evaluations indicating no need for treatment

12

and stating that he would pose a "low" risk to public safety if released;

- Received commendations for his work counseling at-risk youth;

- Trained extensively with a literacy program to tutor fellow inmates;

- Received commendation from a Watch Commander stating that Varner "can work with any professional environment and . . . should do well in society. . . . [If] granted parole Varner can be a viable and contributing individual to society and the community as a whole";

- Has numerous similar commendations and letters of support from correctional officers, a judge, religious leaders, presidents of organizations in which he volunteers, and family members;

- Is very involved in the religious community; the Muslim Chaplain commended his "excellent character and behavior" and stated that in his 15 years he has seen few inmates in whom he has more confidence;

- Received a certificate of recognition from the California State Assembly for his Associate of Arts degree;

- Is a talented songwriter and wrote the theme song for one of his outreach organizations;

- Has accomplished everything the Parole Board had asked of him in

13

previous parole hearings;

- Donated 20% of what he has earned in prison to victims' groups;

- Finally, committed one violent act in prison 25 years ago, in 1985, but has had no infractions since that time.

## VII.

Varner has realistic plans for the future and has taken many practical steps to prepare for life after prison. He has a stable family life, maintains positive relationships with his eleven siblings, and plans to live with one of his sisters upon his release. Varner has a detailed, step-by-step parole plan and an extensive log of "outside support service contact[s]." Remarkably, Varner already has three job offers and plans to begin working immediately upon his release for a medical supply company. *Cf. Cooke*, 606 F.3d at 1211 (citing lack of a "marketable skill" as part of the Parole Board's justification for denying the prisoner parole). Further, Varner plans to later work with the youth crisis counseling program for which he volunteered, and is in communication with a religious organization about spearheading a rehabilitation program aimed at treating drug abuse and curbing recidivism.

## VIII.

Since Varner's hearing in 1990, the Board has consistently recognized that

14

Varner accepts full responsibility for his crime and makes no attempt to excuse what he calls his "willful and intentional role in murdering [the victim]." Varner is remorseful, admitting that there is "no justification for the taking of another human being's life" and acknowledging that he "had an opportunity to consider the consequences of my actions, but I chose not to." Further, during Varner's 2003 parole hearing, the Parole Board acknowledged that Varner expressed sincerely and deeply held feelings of remorse and regret. Varner is now 53 years old and his age further militates in favor of finding that he does not pose a current danger to the public. *See In re Cooper*, 62 Cal. Rptr. 3d 907, 922 (Cal. App. 2007) (holding that the fact that the prisoner was over 50 was a positive factor in the parole decision because prisoners over 50 have a lower likelihood of recidivism). Finally, and most relevant to the Parole Board's inquiry, Varner's psychological reports indicate that he is at only a "low" risk for violent behavior.

Varner's record overwhelmingly indicates that he does not pose an unreasonable risk of current dangerousness and that he would be a highly productive member of society upon his release. Varner committed a terrible crime, turned himself in hours later, and has expressed regret for his actions. For the last two decades, Varner has worked tirelessly to accept responsibility for his crime, close that chapter of his life, and do all that he can to contribute to society and help

15

others who are at risk. If Varner, recognized by so many respected figures as an exceptionally positive and rehabilitated inmate, does not meet the conditions for parole, how can parole in California possibly continue to be the rule, rather than the exception? Denying parole to a model prisoner like Varner raises the bar so high that the notion of parole itself is being denied. Because this result is inconsistent with the laws of California and because the evidence overwhelmingly indicates that it was unreasonable to deny Varner parole, I dissent.

16