FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOUGLAS RAY MILLER,
*Petitioner-Appellant,*

v.

OREGON BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent-Appellee.*

No. 07-36086

D.C. No.
CV-05-00440-
MWM

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
October 6, 2010—Portland, Oregon

Filed January 18, 2011

Before: Richard A. Paez and Richard R. Clifton,
Circuit Judges, and Larry A. Burns, District Judge.*

Opinion by Judge Burns

*The Honorable Larry A. Burns, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

Anthony D. Bornstein, Office of the Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Justice Rillera, Office of the Oregon Attorney General, Salem, Oregon, for the defendant-appellee.

## OPINION

BURNS, District Judge:

We held in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), that only state law can give rise to a liberty interest in parole that is entitled to the protections of the Due Process Clause of the Constitution. This habeas appeal presents the question whether an Oregon statute creates a liberty interest in *early eligibility* for parole. We hold that it does. We also hold that the Oregon Board of Parole ("Board") did not violate Appellant's due process rights when it denied him that eligibility.

## BACKGROUND

Douglas Miller was convicted of aggravated murder by an Oregon jury in August 1982 for hiring another man to kill his wife. He received an indeterminate life sentence with a 30-year minimum term during which he is not eligible for parole. He is still serving that minimum term.

Twenty years into his sentence Miller became eligible for his first "murder review hearing." This hearing, provided for under Oregon law, permits an individual who has been convicted of aggravated murder the opportunity to show that he is "likely to be rehabilitated within a reasonable period of time." Or. Rev. Stat. § 163.105(3) (1981). If the individual can make that showing, his sentence is converted to life imprisonment with the possibility of parole and he immediately becomes parole-eligible. Two sections of the murder review statute are pertinent:

(3) At any time after 20 years from the date of imposition of a minimum period of confinement [for soliciting murder] . . . the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time . . . .

   (a) The prisoner shall have the burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time; and . . .

(4) If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release.

Or. Rev. Stat. § 163.105(3)-(4) (1981). To be clear, these particular sections speak only to *early eligibility* for a parole hearing for persons convicted of aggravated murder; they promise nothing as far as actually being paroled after the hearing.

  For his murder review hearing, Miller submitted a multitude of documents to the Board of Parole to demonstrate his likelihood for rehabilitation within a reasonable period of time. These included: a written statement in which he admitted to his crime; a lengthy and generally favorable psychological report; a statement addressing particular parole criteria; letters he wrote in December 1993 to the district attorney and to the victim's family in which he accepted responsibility for

the murder; letters he wrote terminating his pending habeas petition; proof of his educational and professional achievements while in custody; and letters of support from pastors, a prospective employer, prison staff, fellow inmates, his new wife, and members of the community. At the hearing, the Board engaged Miller in an extended discussion of the circumstances of his crime, which Miller attributed to a "bad marriage and the issue of financial gain." Miller added that he had "difficulty emotionally connecting with people." The victim's sister also appeared at the hearing, and urged the Board to require Miller to serve the full length of his minimum sentence.

The Board deliberated, and, without elaboration, denied Miller's request for an early parole hearing. Miller then sought administrative review of the Board's decision, which under Oregon law is equivalent to a motion for reconsideration. On review, the Board upheld its decision, this time offering the following explanation:

> After considering all of the evidence presented at the hearing, the board concluded that you are not taking responsibility for the crime in a way that would show that you are likely to be rehabilitated within a reasonable period of time. You arranged for your wife to be killed so you could get the insurance money. You also did not want to pay for the expenses that a divorce would involve. You minimized your involvement in the crime during the hearing by denying it was your intent that the murder be carried out. The board is to consider the totality of the circumstances and the evidence presented at the murder review hearing before making its decision. When all of this was taken into consideration, the board felt that you had not satisfied your burden.

Miller appealed to the Oregon Court of Appeals, which affirmed without issuing an opinion. *Miller v. Bd. of Parole*

*and Post-Prison Supervision*, 95 P.3d 756 (Or. Ct. App. 2004). The Oregon Supreme Court denied review. *Miller v. Bd. of Parole and Post-Prison Supervision*, 108 P.3d 1173 (Or. 2005).

Miller next filed a habeas corpus petition under 28 U.S.C. § 2254, alleging that the Board violated his due process rights because it lacked "some evidence" to support its finding that he could not be rehabilitated within a reasonable period of time. The district court disagreed and denied relief, finding "there is certainly 'some evidence' supporting the Board's decision." *Miller v. Oregon Bd. of Parole and Post-Prison Supervision*, 2007 WL 4245912, *4 (D. Or. 2007). We have jurisdiction pursuant to 28 U.S.C. § 1291.

In the time between the district court's denial of Miller's habeas petition and our review of his appeal, Ninth Circuit law has changed. We explain below the intervening change, its application to Miller's habeas petition, and the reasons we affirm the district court's denial of relief.

## DISCUSSION

We review de novo a district court's denial of habeas relief. *Bean v. Calderon*, 163 F.3d 1073, 1077 (9th Cir. 1998). Habeas relief is warranted when an individual is in custody "in violation of the Constitution or laws or treaties of the United States" and the state court's adjudication of the merits of his or her claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [ ] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254. In the absence of a reasoned state court decision on a prisoner's claim, we independently review the record. *See Himes v. Thompson*, 336 F.3d 848, 852-53 (9th Cir. 2003).

### A. Miller's Liberty Interest in Early Eligibility for a Parole Hearing

**[1]** We first address whether Miller has a liberty interest in becoming parole-eligible *early*, that is, before the expiration of the minimum term of his sentence. The Constitution does not, itself, guarantee a liberty interest in parole, but a state's substantive parole scheme may create one that is enforceable under the Due Process Clause. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 12, 16 (1979) (Due Process Clause applies to discretionary parole-release determinations made by the Nebraska Board of Parole); *Bd. of Pardons v. Allen*, 482 U.S. 369, 370-71 (1987) (Montana parole scheme created a federally protected liberty interest in parole). Our en banc court recently reiterated this principle in *Hayward*: "If there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." 603 F.3d at 555.

**[2]** A state parole statute establishes a protected liberty interest in parole when it uses language that creates a presumption that the prisoner will be paroled if certain conditions are satisfied. The Nebraska parole statute in *Greenholtz* provided: "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because [one of four enumerated factors exists]." 442 U.S. at 11. The Supreme Court reasoned that this language created an "expectancy of release" that was "entitled to some measure of constitutional protection." *Id.* at 12.

*Allen* involved a Montana parole statute similar to Nebraska's: "[T]he board shall release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the pris-

oner or to the community[.]" 482 U.S. at 376. The Court held that this statute gave rise to a protected liberty interest in parole release because, like the Nebraska statute in *Greenholtz*, it "uses mandatory language ('shall') to 'creat[e] a presumption that parole release will be granted' when the designated findings are made." *Id.* at 377-78 (quoting *Greenholtz*, 442 U.S. at 12). In addition, the Court "reject[ed] the argument that a statute that mandates release 'unless' certain findings are made is different from a statute that mandates relief 'if,' 'when,' or 'subject to' such findings being made. Any such statute creates a presumption that parole release will be granted." *Id.* at 378 (quotations omitted).

In *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002), we had to decide whether California's parole scheme created a liberty interest in parole, and we drew heavily on *Greenholtz* and *Allen*. The parole statute at issue read:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed
> . . . .

Cal. Penal Code § 3041(b). We determined that this statute paralleled the Nebraska and Montana parole statutes at issue in *Greenholtz* and *Allen*, respectively. We explained that the California statute created a presumption that parole would be granted unless "statutorily defined determinations are made," and we held it therefore gave rise to a liberty interest in parole that is federally protected by the Due Process Clause. *McQuillion*, 306 F.3d at 901.

Here, Oregon argues that the language of its murder review statute distinguishes it from the statutes in *Greenholtz*, *Allen*,

and *McQuillion* and does not create a liberty interest in parole. Those statutes mandate that parole boards "shall" parole a prisoner "unless" they have reasons not to (*Greenholtz* and *McQuillion*) or, in the positive, "when" they believe the prisoner can be trusted to be law-abiding (*Allen*). By contrast, Oregon's statute places the burden on the *prisoner* to show that he or she is capable of rehabilitation. If the prisoner does not meet this burden, the statute explains, "the board shall deny the relief sought in the petition." Or. Rev. Stat. § 163.105(4) (1981). In the State's view, placing the burden of proof on the prisoner—along with the explicit command to "deny the relief" if the burden is not met—removes any presumption that a prisoner will be granted early eligibility for a parole hearing and therefore negates any liberty interest in obtaining that eligibility.

**[3]** We disagree. Whatever differences exist between requiring a parole board to provide reasons for not granting parole and requiring the prisoner to provide reasons why he or she should be paroled, we do not believe they control whether the statute confers a liberty interest. The parole statutes in *Greenholtz, Allen,* and *McQuillion* each provided that a prisoner should be paroled if certain evidentiary conditions were satisfied; similarly, the Oregon murder review statute provides for early eligibility for a parole hearing if a prisoner shows a likelihood of being rehabilitated within a reasonable amount of time. We do not read *Greenholtz, Allen,* and *McQuillion* to require that the evidentiary burden must be on the state to show that a prisoner is not entitled to parole—rather than on the prisoner to show that he or she *is*—in order for a liberty interest in parole to arise.

**[4]** We therefore conclude that the language of Oregon's murder review statute "creates a presumption" in favor of early eligibility for a parole hearing "when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion*, 306 F.3d at 901 (internal quotation marks omitted).

## B. *Miller's Due Process Rights*

We now turn to whether the Board violated Miller's due process rights when it found he was not likely to be rehabilitated within a reasonable period of time and denied him early parole eligibility. Miller argues the Board's determination violated his constitutional rights because it was not supported by some evidence in the record. The district court also relied on the "some evidence" standard in concluding that the Board did not violate Miller's rights. *Miller v. Oregon Bd. of Parole and Post-Prison Supervision*, 2007 WL 4245912, *3 (D. Or. 2007). Our decisions in *Hayward* and *Pearson v. Muntz*, 625 F.3d 539 (9th Cir. 2010) have since clarified, however, that the "some evidence" standard is not constitutionally mandated in all parole cases.

**[5]** While we applied the standard in *Hayward*, we did so only because the California law at issue in that case required it. 603 F.3d at 562. We explained in *Pearson* that *Hayward*

> asserted clearly that the United States Constitution does not establish a *uniform* federal requirement of "some evidence" that applies to parole decisions in *every* state, and that no such requirement exists "in the absence of state law establishing otherwise." We noted that the scope of any federal due process right to release on parole depends on the "substantive state law" that defines the attributes of the particular parole system at issue.

*Pearson*, 625 F.3d at 549 (quoting *Hayward*, 603 F.3d at 555). Thus, under *Hayward*, state law determines whether a prisoner has a liberty interest in parole (or, as here, to an early parole hearing), and also defines the quantum of evidence that the Due Process Clause requires to support a state parole board's decision.

**[6]** Oregon's murder review statute specifies that the prisoner must show the likelihood of rehabilitation by a prepon-

derance of evidence, but it is silent as to the quantum of evidence the Board must have in order to find the prisoner has not met this burden. However, Oregon Revised Statute section 183.482 grants the Oregon Court of Appeals jurisdiction to review Board orders, and subsection 8(c) provides that the "court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record." Or. Rev. Stat. § 183.482(8)(c). Substantial evidence is evidence that is sufficient "to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* Thus, Miller's due process rights were not violated if a reasonable person could have reached the same conclusion the Board reached.

**[7]** The record demonstrates that the Board was swayed by two factors. First, Miller's offense was particularly callous and depraved. He arranged for his wife to be killed for his own economic benefit—to receive an insurance payout *and* to avoid a costly divorce. Second, even though he had years to reflect on his actions and to develop some self-understanding, Miller's statements about what led him to commit the crime—and what insights he had gained while in custody—were shallow and platitudinal. Miller also continued to deflect responsibility for the crime. In the written statement he submitted to the Board, Miller said "[m]any times I have regretted the day I met the Allen boys [his coconspirators in the murder], recognizing the role they played in this crime." He added, "I have often struggled with whether or not there was a disparity in the sentencing with us three." These statements betray Miller's refusal to take *personal* responsibility for his crime, and also call into question his remorse for committing the offense and his potential for rehabilitation.

**[8]** Considering the callous nature of Miller's crime, his woeful insight into why he committed it, and his lack of remorse, a reasonable parole board could have concluded that he failed to demonstrate—by a preponderance of the evidence—that he was a suitable candidate for an early parole hearing.

Moreover, we are not limited to the Board's Administrative Review Response in our review; we can affirm for any reason that is supported by the record. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994). The district court found that the psychological report Miller submitted was "not entirely positive," and noted Miller's unwillingness to own up to his crime for the first decade he was in custody. We agree with the district court that these additional factors support the Board's decision to deny Miller an early parole hearing. The Board's decision is supported by the quantum of evidence required by Oregon law, and the Board therefore did not violate Miller's federally-protected liberty interest in early parole eligibility.

## CONCLUSION

Oregon's aggravated murder review statute creates a federally-protected liberty interest in early parole eligibility, and the Due Process Clause requires that the Board of Parole's determinations be supported by "substantial evidence" as that standard is defined under Oregon law. *See* Or. Rev. Stat. § 183.482(8)(c). Here, the Board's denial of relief at the conclusion of Miller's murder review hearing did not violate his due process rights and was not an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Miller is not entitled to habeas corpus relief.

**AFFIRMED.**