**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH A. ROBERTS,
    *Petitioner-Appellee,*

v.

JAMES D. HARTLEY, Warden,
    *Respondent-Appellant.*

No. 10-15760

D.C. No.
1:08-cv-01093-
AWI-JMD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
January 11, 2011—San Francisco, California

Filed April 12, 2011

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Christopher J. Rench, Deputy Attorney General, Sacramento, California, for appellant James D. Hartley.

David M. Porter, Assistant Federal Defender, Sacramento, California, for appellee Kenneth A. Roberts.

## OPINION

WALLACE, Senior Circuit Judge:

The Warden appeals from the district court's issuance of a writ of habeas corpus in favor of Petitioner Kenneth A. Roberts. The district court issued the writ pursuant to 28 U.S.C. § 2254(d) after concluding that California misapplied its standard for determining Roberts's eligibility for parole. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253(a). In light of the Supreme Court's recent decision in *Swarthout v. Cooke*, 131 S. Ct. 859 (2011), we reverse.

## I.

California law vests the State Board of Prison Terms (Board) with authority to evaluate whether state prisoners, such as Roberts, are eligible for parole. In conducting this evaluation, the Board is required to "set a release date" for an inmate unless the Board finds that "consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code Ann. § 3041(b) (West 2010). When the Board determines that an inmate is ineligible for parole, that prisoner can seek judicial review by filing a petition for collateral relief in state court. Review of the Board's decision, however, is "extremely deferential." *In re Rosenkrantz*, 59 P.3d 174, 210 (Cal. 2002). A decision denying parole must be upheld as long as " 'some evidence' supports the conclusion that the inmate . . . is dangerous." *In re Lawrence*, 190 P.3d 535, 539 (Cal. 2008).

Roberts appeared before the Board for consideration of his eligibility for parole in June 2006. He had been convicted of

second-degree murder twenty years earlier and sentenced to a term of life imprisonment with the possibility of parole. At the 2006 parole hearing, the Board permitted Roberts to speak on his own behalf and to respond to the evidence presented against him. Upon review of the evidence in Roberts's parole file, the Board denied parole due to concerns about the nature of Roberts's offense, his subsequent minimization of the murder, and his reasons for surrendering to law enforcement.

Shortly after the Board issued its decision, Roberts filed a petition for collateral relief in state superior court. Relying on *Rosenkrantz*, Roberts asserted that the Board's parole decision was not supported by sufficient evidence of dangerousness. The superior court disagreed, concluding that the Board's decision satisfied California's "some evidence" standard because Roberts committed his crime in "a dispassionate and calculated manner" and for a "very trivial motive." Roberts's subsequent petitions to the court of appeal and state supreme court were summarily denied.

Roberts then filed a petition for a writ of habeas corpus in the Eastern District of California. Following then-existing precedent, the district court issued the writ, holding that Roberts's due process rights had been violated by the state court's misapplication of California's "some evidence" standard for parole determinations. Relying on a magistrate judge's report and recommendation, the district court concluded that there was no nexus between the facts relied upon by the state superior court and the Board's finding that Roberts presented a current threat of dangerousness.

## II.

We review a district court's decision to issue a writ of habeas corpus de novo. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner is not entitled to a writ of habeas corpus unless he establishes that

the state court's adjudication of a *federal* claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. §§ 2254(a), (d)(1)-(2).

Until now, and notwithstanding AEDPA's deferential standard of review, our circuit has permitted California prisoners seeking parole to obtain a federal writ of habeas corpus based on a state court's misapplication of California's "some evidence" standard. We recently addressed this issue en banc in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010). There, we overruled a line of cases in which we had indicated that the constitutional right to due process requires a state's decision denying parole to be based upon "some evidence" of current dangerousness. *See id.* at 555. Yet, while we held that the Due Process Clause "does not, by itself, entitle a prisoner to parole in the absence of some evidence of . . . dangerousness," *id.* at 561, we nonetheless suggested that California's parole scheme creates a "liberty interest . . . that [is] entitled to protection under the Due Process Clause." *Id.*, *quoting Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987). We then stated that "courts in this circuit facing [this] issue in the future[ ] need only decide whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was based on an unreasonable determination of the facts in light of the evidence." *Id.* at 562-63 (internal footnote omitted).

**[1]** Our decision in *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010), went further. There, we explicitly held that California's "some evidence" standard creates a liberty interest protected by the Constitution's Due Process Clause. *Id.* at 1213. After construing the state court's some evidence determination as a finding of fact, we then held that Cooke's due pro-

cess rights had been violated because the state court decision affirming the Board's denial of parole was "based on an unreasonable determination of the facts in light of the evidence." *Id.* at 1216, *quoting Hayward*, 603 F.3d at 563. In essence, *Cooke* held that federal courts within our circuit are to grant habeas relief if the California judicial decision upholding the denial of parole was based on an unreasonable application of that state's "some evidence" requirement. *Id.* Subsequent cases followed a similar approach. *See, e.g.*, *Pearson v. Muntz*, 625 F.3d 539 (9th Cir. 2010); *Pirtle v. Cal. Bd. of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010).

**[2]** The Supreme Court, however, recently reversed our decision in *Cooke*, holding we did not apply the correct legal test for determining whether a state prisoner's due process rights had been violated by a state court decision approving the Board's parole determination. The Court instructed that the due process inquiry must be analyzed in two steps. *Cooke*, 131 S. Ct. at 861. "We first ask whether there exists a liberty or property interest of which a person has been deprived . . . ." *Id*. The second step requires us to "ask whether the procedures followed by the State were constitutionally sufficient." *Id.*; *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 12 (1979).

**[3]** Turning to the first step, *Cooke* did not disturb our conclusion that California law creates a liberty interest in parole. *Id.* at 861-62. Nevertheless, because states "are under no duty to offer parole to their prisoners," the Court explained that the existence of this *state* liberty interest does not give rise to a *federal* right "to be conditionally released before the expiration of a valid sentence." *Id.* at 862, *citing Greenholtz*, 442 U.S. at 7.

**[4]** Thus, when "a State creates a liberty interest" in parole, the second step of the due process inquiry requires federal courts to evaluate whether the state provided "fair procedures" for the vindication of that interest. *Id.* Under this step,

we look to federal law to determine whether a state prisoner has been afforded the procedural protections required by the Constitution. *Id.* In the parole context, "the procedures required are minimal." *Id.* Due process is satisfied as long as the state provides an inmate seeking parole with "an opportunity to be heard and . . . a statement of the reasons why parole was denied." *Id.*, *citing Greenholtz*, 442 U.S. at 12. Stated otherwise, there is no substantive due process right created by California's parole scheme. If the state affords the procedural protections required by *Greenholtz* and *Cooke*, that is the end of the matter for purposes of the Due Process Clause. *See Hayward*, 603 F.3d at 560 ("The Constitution does not require more than an opportunity to be heard and a statement telling the prisoner why he was not paroled" (internal quotation marks omitted)).

### III.

**[5]** Based on *Cooke*, it is clear that California did not violate Roberts's due process rights when it denied his request for parole. At his parole hearing, the Board permitted Roberts to speak on his own behalf and to contest the evidence against him. *See* Cal. Penal Code Ann. §§ 3041, 3041.5. The Board further provided Roberts an explanation of its decision. *See id.* at § 3041.5(b)(2). This was sufficient to satisfy the Due Process Clause. *See Cooke*, 131 S. Ct. at 862.

**[6]** It makes no difference that Roberts may have been subjected to a misapplication of California's "some evidence" standard. A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. *See* 28 U.S.C. § 2254(a) (stating that a federal court may grant the writ only if a state prisoner's custody violates the Constitution or other laws of the United States); *Cooke*, 131 S. Ct. at 861 ("[F]ederal habeas corpus relief does not lie for errors of state law." (quotation omitted)). Admittedly, our prior precedent required review of the propriety of a California state court's "some evidence" determination. *See, e.g.*, *Pearson*,

625 F.3d at 550; *Pirtle*, 611 F.3d at 1025. Nevertheless, *Cooke* overruled that precedent. 131 S. Ct. at 862.

Finally, Roberts's reliance on our decision in *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), cannot save his due process claim. In *Irons*, we relied on the Supreme Court's decision in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), and concluded that a state's parole system gives rise to the same procedural protections that must be afforded to prisoners deprived of "good-time credits." *Id.* at 851, *citing Hill*, 472 U.S. at 457. Our en banc decision in *Hayward*, however, clarified that there is an important "constitutional distinction between good time and parole." 603 F.3d at 558. We explained that "[g]ood time is not, as parole is, a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may be rather than simply what he has done.' " *Id.* at 560-61, *quoting Greenholtz*, 442 U.S. at 10. We therefore explicitly overruled *Irons* and held that *Greenholtz*, rather than *Hill*, dictates the procedural rights that must be afforded to a California prisoner who has been denied parole. *Id.* at 555, 560 n.82.

*Cooke* reaffirms the distinction between the process necessary when a prisoner's good-time credits are revoked and the process due when a state denies a prisoner's request for parole. Examining state law, the Court explained that California does "not purport to equate [its] parole system with good-time credits." *Cooke*, 131 S. Ct. at 862 n.1. Nevertheless, even if California, as a matter of state law, did mandate the same procedural protections for parole determinations as those required for the revocation of good-time credits, the outcome in this case would be no different. "[T]he question of which due process requirements apply is one of federal law, not [state] law." *Id.* Given that Roberts received all of the process to which he was due under the applicable test from *Greenholtz* and *Cooke*, his due process claim necessarily fails.

## IV.

**[7]** The district court granted habeas relief without the benefit of the Court's recent decision in *Cooke*. As we very recently stated, "*Cooke* was unequivocal in holding that if an inmate seeking parole receives an opportunity to be heard, a notification of the reasons as to denial of parole, and access to their records in advance, that should be the beginning and the end of the inquiry into whether the inmate received due process." *Pearson v. Muntz*, ___ F.3d ___, 2011 WL 1238007, at *5 (9th Cir. April 5, 2011) (internal quotation marks and alterations omitted). *Cooke* clearly holds that the "responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts." 131 S. Ct. at 862. To lend emphasis to the holding, the Court directed that it "is no part of the Ninth Circuit's business" to reevaluate California's application of its rules for determining parole eligibility. *Id*.

**REVERSED.**